**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

WILLY OSCAR FALCON-HUALLPA,
Petitioner,
v.
FERETI SEMAIA, et al.,
Defendant.

Case No. 5:26-CV-04152-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Willy Oscar Falcon-Huallpa ("Petitioner") filed "Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" ("Petition") seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. (Dkt. 1.) The Court has considered the Petition, Respondents' Answer, and Petitioner's notice that he does not intend to file a reply.

## I. FACTUAL AND LEGAL BACKGROUND

Petitioner is a Peruvian citizen who entered the United States at or near Del Rio, Texas, on May 20, 2022. (Dkt. 1 at 4.) On June 13, 2022, Petitioner was released from immigration custody on parole with reporting requirements. (*Id.*) Petitioner claims, and the government does not dispute, that Petitioner complied with all of his parole conditions. (*Id.*; *generally* Dkt. 9.)

///

Soon after Petitioner arrived in the United States, he moved to Los Angeles County. (Dkt. 1 at 4.) He attended services at South Bay Church in Lomita, California, three times a week. (*Id.*) He made many close friends at the church as exemplified by the letters of support attached to the Petition. (*Id.*) He also began working at a tire shop. (*Id.* at 5.) He enrolled at the Harbor Occupational Center and studied auto mechanics, electrical engineering, and English for nearly two years. (*Id.*) His auto mechanics professor was so impressed with his work that he made Petitioner his assistant in class. (*Id.*) Petitioner used the skills he learned to build a clientele in his community. (*Id.*) When Petitioner finished his studies in mid-2024, Petitioner continued working independently as a mechanic in his community. (*Id.*)

On November 20, 2025, Petitioner was helping a friend fix his car when ICE arrived at the location. (Dkt. 1 at 6.) Petitioner cooperated with ICE and gave ICE his driver's license. (*Id.*) Petitioner complied with ICE's commands. (*Id.*) Petitioner was then taken into immigration custody. (*Id.*) The next day petitioner was transferred to Adelanto ICE Processing Center. (*Id.* at 7.)

While on parole, Petitioner claims he attended his ICE appointments and immigration hearings. (Dkt. 1 at 4.) Respondents do not dispute this. (Dkt. 9.) Petitioner claims, and Respondents do not dispute, that Petitioner has no criminal history. (Dkt. 1 at 4.)

Petitioner filed an asylum application based on persecution he faces from members of Tren de Aragua in Venezuela and Peru for refusing to give money and for reporting them to the police. (Dkt. at 5.) Petitioner fears that gang will kill him if he returns to Peru or Venezuela. (*Id.*) Petitioner's asylum application was pretermitted while he was in immigration detention on February 19, 2026. (*Id.*) Petitioner timely appealed to the Board of Immigration Appeals on February 20, 2026. (Id. at 5-6.)

On June 2, 2026, Petitioner had a custody redetermination hearing pursuant to 8 C.F.R. § 1236 before an immigration judge. (Dkt. 9-2 at 1.). The immigration judge found "the Department has met their burden to demonstrate that the Respondent, if

released, would pose a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate." (*Id.*)

On July 24, 2026, Petitioner filed the Petition. (Dkt. 1.) Petitioner brings two claims for relief. (*Id.* at 31-34.) The first claim for relief is violation of procedural due process under the Fifth Amendment. (*Id.* at 31-32.) The second claim for relief is violation of substantive due process under the Fifth Amendment. (*Id.* at 32-33.) As relief, Petitioner requests, among other things, that he be immediately released from immigration custody and placed back on his same supervision requirements. (*Id.* at 34.)

Respondents filed Answer to Petition for Writ of Habeas Corpus ("Answer") on July 31, 2026. (Dkt. 9.) Respondents argue that Petitioner concedes he received a § 1226(a) hearing and Petitioner must exhaust his administrative remedies. (*Id.* at 2-6.)

On August 24, 2026, Petitioner notified the Court that he will not be filing a reply to the Answer. (Dkt. 10 at 2.)

## II. ANALYSIS

### A. Habeas Jurisdiction

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003).

///

**B. Petitioner's Due Process Claims**

Petitioner argues that his detention since November 20, 2026, without notice and a pre-detention hearing, violates the due process clause of the Fifth Amendment. Consistent with decisions by this District and others, the Court finds that Petitioner's re-detention, without notice or a meaningful opportunity to be heard, violates due process.

As a threshold matter, the Court has jurisdiction over this action because Petitioner is not challenging his removal proceedings; Petitioner is challenging his prolonged and mandatory detention by Respondents. (Dkt. 1.)

Authority delegated to the Attorney General, such as those related to immigration proceedings, is still subject to the requirements of due process. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. Const. amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. And the Supreme Court has repeatedly recognized "that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

Below, the Court addresses Petitioner's claim on the merits that he has been unlawfully detained. For the reasons that follow, the Court concludes that Petitioner's current detention is pursuant to 8 U.S.C. § 1226(a) ("§ 1226(a)"), and his prolonged detention violates his procedural due process rights.

**1. Petitioner is detained pursuant to § 1226(a)**

Petitioner alleges that he was originally detained by Respondents after his arrival in the United States, appears to have been released on June 13, 2022, and has resided in the United States since then. (Dkt. 1 at 4-6.) In opposition, Respondents argue that Petitioner has already received a bond hearing and that Petitioner allegedly concedes

was in compliance with § 1226(a). (Dkt. 9.) Respondents do not argue that Petitioner is subject to mandatory detention and appear to concede that Petitioner is detained under § 1226(a) given Respondents' argument that Petitioner has already received a bond hearing under § 1226(a). Given Petitioner's undisputed allegations, the Court concludes that Petitioner is detained pursuant to § 1226(a).

**2. Petitioner's detention violates due process.**

The Court turns to Petitioner's procedural due process claim. (Dkt. 1 at 31-32.) For the reasons that follow, the Court concludes that Petitioner's detention violates due process.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. The right to due process extends to noncitizens in the United States. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238, 163 S. Ct. 977, 41 L. Ed. 140 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law."); *Trump v. J. G. G.*, 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation modified).

It is also well-established that freedom from government detention is a protected liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of

the liberty [the Due Process Clause] protects."). Due process rights extend to noncitizens present in the United States. *Id*. at 693-94. Thus, Petitioner has a protected liberty interest in freedom from detention.

The Court applies the three-part test established in *Mathews v. Eldridge* to determine whether the government's procedures were constitutionally sufficient. 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. The Court finds that each of the three *Mathews* factors supports Petitioner's right to notice and a hearing before a neutral decisionmaker prior to detention.

First, Petitioner has a substantial liberty interest in remaining out of custody after living in the United States for over three years following his release from Respondents' custody. (Dkt. 1 at 4.) Petitioner formed many friendships with fellow church members as exemplified by the letters attached to the Petition. (*Id*. at 4.) He completed a two-year trade program, and one of his instructors was so impressed with him that he asked Petitioner to work as an assistant. (*Id*. at 5.) Petitioner worked as a mechanic and built up a clientele in his community, as well. (*Id*.) And, as discussed above, Petitioner is detained under § 1226(a), which does not require mandatory detention. Furthermore, regardless of what provision Petitioner is detained under, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Accordingly, Petitioner's private liberty interest is significant.

Second, the Court finds that the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a hearing before a neutral decisionmaker. *Zadvydas*, 533 U.S. at 693-94. Here, Respondents appear to have taken Petitioner into

immigration custody without notice and a hearing. (Dkt 1. at 2.) Respondents argue that the Court should deny the Petition because Petitioner received a bond hearing on June 2, 2026, where the immigration judge denied bond due to Petitioner being a significant flight risk. (Dkt. 9-2 at 2.) Respondents' argument misses the mark because the in-custody redetermination proceedings by definition occurred after Petitioner was arrested and detained. Therefore, the bond hearings cannot support Petitioner's continued detention when the underlying arrest and detention were in violation of Petitioner's due process rights and, thus, invalid. *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) ("that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."). Additionally, Respondent has now held Petitioner in detention for more than nine months. Petitioner, thus, appears to have been deprived of his liberty interest erroneously based on Respondent's failure to comply with Petitioner's rights under the Due Process Clause. Accordingly, the Court is not satisfied that Respondent complied with due process requirements when detaining Petitioner, and, thus, it finds that the risk of erroneous deprivation is high.

Third, the Court finds that the government has a low interest in keeping Petitioner detained. To determine the Government's interest, the Court must look at the function involved and the fiscal and administrative burdens imposed by the additional procedures. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E D. Cal. July 11, 2025). Here, the Court finds that the Government's interest in detaining Petitioner without providing him with notice and a hearing prior to detention is minimal and that his right to due process was violated by his detention without pre-deprivation notice and a hearing.

## III. CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS:

(1) Respondents to release Petitioner Willy Oscar Falcon-Huallpa (A# 240-734-187) immediately under the same conditions as Petitioner was released prior to Petitioner's re-detention;

(2) Respondents to return all property to Petitioner that was confiscated from Petitioner when Petitioner was arrested and processed into detention;

(3) Respondents to file a statement with the Court within three days of Petitioner's release, attesting to Respondents' compliance with this Order; and

(4) That any future enforcement actions after Petitioner's release must comply with Due Process requirements.

DATED: September 8, 2026



HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge